1   STEPTOE & JOHNSON LLP
    201 East Washington Street, Suite 1600
2   Phoenix, Arizona 85004-2382
    Telephone: (602) 257-5200
3   Facsimile: (602) 257-5299

4   Shannon E. Trebbe (028533) (strebbe@steptoe.com)

5   1330 Connecticut Avenue, N.W.
    Washington, D.C.  20036
6   Telephone: (202) 429-3000
    Facsimile:  (202) 429-3902
7
    James F. Hibey (jhibey@steptoe.com)
8   Shannen W. Coffin (scoffin@steptoe.com)
    David M. Crane (dcrane@steptoe.com)
9   (Pro Hac Vice Applications Forthcoming)

10  Attorneys for Defendant New Frontier Innovations, LLC

11                    UNITED STATES DISTRICT COURT

12                         DISTRICT OF ARIZONA

13
    William P. Burnette, a single man,        )
14                                            )   No.
                         Plaintiff,           )
15                                            )   **NOTICE OF REMOVAL OF**
               vs.                            )   **ACTION UNDER 28 U.S.C. §**
16                                            )   **1441(b) (Diversity Jurisdiction)**
    Sierra Nevada Corporation, a Nevada       )
17  corporation; New Frontier Innovations,    )
    LLC, a Delaware corporation,              )
18                                            )
                         Defendant.           )
19  _____ )

20          Defendant New Frontier Innovations, LLC ("NFI"), hereby give notice of

21  removal of this action to the United States District Court for the District of Arizona.

22  Defendant Sierra Nevada Corporation ("SNC") consents to this notice.  A copy of this

23  notice has been filed in the Maricopa County Superior Court.  Removal is appropriate

24  under 28 U.S.C. §1441(b) (diversity) for the reasons stated below.

25          1.      Plaintiff William P. Burnette Jr. filed this action for wrongful death in

26  Superior Court for the State of Arizona, County of Maricopa, on October 16, 2014.

27  Undersigned counsel verifies that true and correct copies of all pleadings and other

28  documents that were previously filed in the state court proceeding are attached as Ex. 1.

2.      Service of the summons and Complaint on SNC was completed by hand on its agent for service of process, Corporation Service Company, in Wilmington, Delaware on November 26, 2014.  Affidavit of Gregory J. Livingston ("Livingston Aff.") ¶ 3 (attached as Ex. 2).  Service of the summons and Complaint on NFI was completed by hand on its agent for service of process, The Corporation Trust Company, in Wilmington, Delaware on November 24, 2014.   Declaration of Tushar Suthar ("Suthar Decl.") ¶ 4 (attached as Ex. 3).

3.      Under 28 U.S.C. § 1446(b)(1), this Notice of Removal is timely filed within 30 days after service of the summons and Complaint on Defendants.

4.      The Complaint alleges that Plaintiff's son, William Burnette, III was killed in a plane crash that occurred in an area near the border of Colombia and Panama. Compl. ¶ 35. Decedent was a crew member on a flight conducting counter-narcotics surveillance flights as part of a defense contract with the United States Air Force. *See id.* ¶¶ 18-32. Plaintiff alleges that defendants SNC and NFI were defense contractors responsible for maintaining and operating the aircraft under contracts with the United States. *Id.* ¶¶ 18-24. He seeks damages as decedent's surviving father under Arizona's wrongful death statute, A.R.S. §12-611 *et seq.*, including "special damages" for loss of consortium and loss of future economic support, and general damages for "loss of consortium and support, sorrow, anguish, pain, anxiety, and shock." *Id.* ¶¶ 60-62.

## JURISDICTION

5.      Removal is proper pursuant to 28 U.S.C. § 1441(a) and (b) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Consequently, if this action had been filed originally in federal court, this Court would have had original jurisdiction under 28 U.S.C. § 1332(a)(1).

## I.      THERE IS COMPLETE DIVERSITY IN THIS CASE

6.      This is a civil action between citizens of different states, and there is complete diversity in this case. The Complaint alleges that Plaintiff is a resident of

- 2 -

Maricopa County, Arizona. *Id*. ¶ 3. Plaintiff alleges that the decedent was a resident of Oklahoma. *Id.* ¶ 1.

7. Neither defendant is a citizen of Arizona. Defendant SNC is a Nevada corporation with its principal place of business in Nevada. *See* Compl. ¶ 4; Livingston Aff. ¶ 4.

8. NFI is a limited liability company organized under the laws of Delaware with its principal place of business in Alexandria, Virginia. Suthar Decl. ¶ 2. NFI's sole owner, Mr. Tushar Suthar, is a citizen and resident of Virginia. *Id.* ¶ 3; *see Johnson v. Colombia Anchorage Properties LP*, 437 F.3d 894, 899 (9th Cir. 2006) (for diversity purposes, limited liability company is a citizen of the States of citizenship of its owner).

## II.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

9. Consistent with Arizona law, the Complaint does not state an amount in controversy.[1] However, the amount in controversy plainly exceeds $75,000. *See Dart Cherokee Basin Operating Co. v. Owens*, --U.S.--, 2014 WL 7010692, at *6 (Dec. 15, 2014) (defendant's allegation that amount in controversy exceeds $75,000 should be accepted unless disputed). In determining the amount in controversy where it is not stated in the complaint, the Court first asks whether it is "facially apparent" that the amount in controversy requirement is satisfied based on the allegations of the complaint. *Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997).

10. Here, it is facially apparent that the amount in controversy threshold is satisfied. The Complaint alleges that decedent was killed in a plane crash while performing his job as part of a crew doing counter-narcotics surveillance. Plaintiff seeks

---

[1] Although the Plaintiff does not allege the amount in controversy in his Complaint, his state court filing includes a certification that the "dollar limits and other limitation set forth by the Local Rules of Practice for the Superior Court and . . . that this case is NOT subject to compulsory arbitration." *See* Certificate of Compulsory Arbitration. The Local Rules of Maricopa County Superior Court do not require mandatory arbitration where the amount in controversy is more than $50,000, so Plaintiff has asserted that his claim is valued above $50,000. *See* Super. Ct. for County of Maricopa Admin. Order 2011-124. The facts described below demonstrate that the claim exceeds the $75,000 amount-in-controversy requirement for diversity jurisdiction.

damages for wrongful death of his son and his own losses, including loss of consortium, lost future economic support, and pain and suffering. In similar circumstances, courts have found the amount in controversy to be satisfied as a result of the allegations in the Complaint. *See, e.g.*, *Moore v. Goodyear Tire & Rubber Co.*, No. CV-11-01174-PHX-NVW, 2011 WL 3684508, at *3 (D. Ariz. Aug. 23, 2011) ("[Wrongful-death] cases, if successful, are generally known to produce verdicts far in excess of $75,000."); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993) (facially apparent that amount in controversy is satisfied by wrongful death claims brought by surviving family members of decedent killed in plane crash); *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed App'x 62, 66-67 (5th Cir. 2010) ("facially apparent" that amount in controversy is satisfied in wrongful death claims brought by surviving family of decedent killed in forklift accident).

11.     Even if not apparent from the face of the Complaint, it is clear that the amount in controversy in this case exceeds the jurisdictional threshold of $75,000. First, a similar case was brought against SNC and NFI in federal court in Texas by a surviving family member of the other sensor operator (the job performed by the decedent here) on the flight at issue. In *Moore v. Sierra Nevada Corp.*, 2:14-cv-00049 (S.D. Tex.), the surviving adult child of Ralph Dietz sued SNC and NFI alleging damages for lost companionship and society and severe emotional pain, torment and suffering. *See* Moore 2d Am. Compl. ¶¶ 41-42 (Dkt. No. 61) (attached as Ex. 1 to Suthar Decl.). Plaintiff there alleged that the amount in controversy exceeded $75,000. *Id. ¶* 6. There is no reason to think the value of the claims by a surviving family member of a similarly situated deceased crew member would be any less here.

12.     A cursory review of jury verdicts in Arizona and elsewhere confirms that juries frequently award damages in excess of $75,000 for wrongful death claims in similar circumstances. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (district court properly considered jury verdicts in similar cases in determining amount in controversy); *Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 578 (D. Ariz. 2003)

(removing defendant established the amount in controversy requirement where notice of removal cited similar cases in which the plaintiff was awarded amounts in excess of jurisdictional threshold); *Burk v. Med. Sav. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (removing defendants can establish amount in controversy "by introducing evidence of jury verdicts in analogous cases"). Wrongful death verdicts awarded to surviving parents in Arizona are attached as Ex. 4, and include:

- *Odom v. Am. Home Maintenance Inc.*, No. CV2011-093822 (Az. Super. Ct.) (reported at 2012 WL 6608291), a Maricopa County jury awarded $200,000 (reduced to $160,000 for the contributory negligence of the decedent) to the surviving mother of an adult child killed when struck by a moving vehicle while attending to her disable vehicle on the side of the road.

- *Santoyo v. Groff*, CV2008-051297 (Az. Super. Ct.) (reported at 2010 WL 3010775), a Maricopa County jury awarded $150,400 to each of the surviving parents of a motorcyclist killed as a result of a collision with another vehicle at an intersection for their claims for funeral expenses and deprivation of love, affection and companionship, as well as personal outrage, anguish, discomfort, anxiety and sorrow.

- *Girouard v. Skyline Steel*, CV2004-003056 (Az. Super. Ct.) (reported at 2005 WL 3730612), a Maricopa County jury awarded $250,000 to each of the surviving parents of an adult son who had been killed when the van he was driving was hit from behind by a crane truck on the interstate in Tempe, Arizona. (The award to the surviving father was vacated on his successful appeal, who argued that the award would have been even higher if certain evidence of the son's suffering were properly admitted. *See Girouard v. Skyline Steel*, 215 Ariz. 126, 158 P.3d 255 (App. Div. 2007)).

- *Durrenberger v. Pioneer Industries, Inc.*, C-2006-2958 (Az. Super. Ct.) (reported at 2008 WL 1699226), a Pima County jury awarded $300,000 each surviving parent of an adult son (reduced to $120,000 each as a result of contributory negligence of the decedent) killed when the Mazda coupe he was driving collided with a flatbed truck.

- *Shaw v. Southwest Truck Service, Inc.*, No. 85047.001 (Az. Super Ct.) (1987 WL 365239), a Maricopa county jury awarded $400,000 to the parents of each of two decedents killed when their truck ran into the back of an illegally parked tractor-trailer. This verdict was awarded in 1987.

13.   Similarly, juries throughout the country frequently award amounts greater than $75,000 to the surviving parents or non-dependent adult children of decedents killed in aviation accidents, and examples of such awards are attached as Ex. 5:

- *Ellis v. Delta Airlines*, 1987 WL 231922 (Tex.), a jury awarded the mother of a student killed in a Delta Airlines crash more than $250,000 (in 1987 dollars) for lost companionship and mental anguish from the loss of her son.

- *Schofield v. Piper Aircraft Company*¸ 1988 WL 367320 (E.D. Pa.), a Pennsylvania jury awarded the parents of a pilot killed in an airplane crash allegedly caused by defective airplane parts $503,000 (in 1988 dollars) for the loss of their son's services (in addition to damages for the lost wages of the son).

- *Powell v. Pan Am. World Airways, Inc.* 1987 WL 231591 (Cal.), a California jury awarded the parents of a 25-year old killed in a 1982 plane crash $75,000.

- *Daggett v. United States*, 21 Fla. J.V.R.A. 11:C2, 2011 WL 10549329 (S.D. Fla.), a Florida federal district court awarded $796,000 to the two surviving adult children of a 53-year old woman killed in a plane crash.

- 6 -

14.     As these cases illustrate, juries have frequently awarded amounts well in excess of the $75,000 threshold for similar wrongful death claims. There can be little question here that the amount in controversy is met here, and thus removal to this Court is appropriate.

15.     Written notification of the filing of this Notice of Removal will be served on Plaintiff's counsel and filed with the clerk of the superior court, as required by 28 U.S.C. § 1446(d).

### CONCLUSION

For the reasons stated herein, diversity jurisdiction is appropriate in this Court under 28 U.S.C. § 1332(a). Defendants therefore give notice of the removal of this case to this Court.

DATED this 23rd day of December, 2014.

STEPTOE & JOHNSON LLP

By: s/Shannon E. Trebbe
    Shannon E. Trebbe
    201 E. Washington Street, Suite 1600
    Phoenix, Arizona 85004-2382

    James F. Hibey (jhibey@steptoe.com)
    Shannen W. Coffin (scoffin@steptoe.com)
    David M. Crane (dcrane@steptoe.com)
    1330 Connecticut Avenue, N.W.
    Washington, D.C.  20036
    (Pro Hac Vice Applications Forthcoming)

Attorneys for Defendant New Frontier Innovations, LLC

1    Copy mailed this 23rd day of
     December, 2014, to:
2
     Robert K. Lewis
3    Christopher A. Treadway
     Lewis Law Firm, PLC
4    2633 E. Indian School Road, Suite 360
     Phoenix, AZ 85016
5    Rob@Lewis and Pokora.com
     Chris@ Lewis and Pokora.com
6    Attorney for Plaintiff

7    Amy M. Pokora
     Pokora Law, PLC
8    2633 E. Indian School Road, Suite 360
     Phoenix, AZ 85016
9    Amy@Lewis and Pokora.com
     Attorneys for Plaintiff
10

11   s/Diane Hodges

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

 CT Corporation

**Service of Process Transmittal**
11/24/2014
CT Log Number 526131953

TO: Tushar Suthar
New Frontier Innovations, LLC.
833 S Fairfax St
Alexandria, VA 22314-4311

RE: **Process Served in Delaware**

FOR: New Frontier Innovations, LLC. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | William P. Burnette, etc., Pltf. vs. Sierra Nevada Corporation, etc., et al. including New Frontier Innovations, LLC, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Certificate, Demand |
| **COURT/AGENCY:** | Maricopa County - Superior Court, AZ<br>Case # FC2014013246 |
| **NATURE OF ACTION:** | Wrongful Death - 10/05/2013 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/24/2014 at 15:45 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Robert K. Lewis<br>Lewis Law Firm, PLC<br>2633 E. Indian School Road<br>Suite 360<br>Phoenix, AZ 85016 |
| **REMARKS:** | Please note the process server underlined and/or highlighted the entity being served prior to receipt by CT. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 771987703187 |
| **SIGNED:** | The Corporation Trust Company |
| **ADDRESS:** | 1209 Orange Street<br>Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

1   Robert K. Lewis, State Bar No. 016625
    Christopher A. Treadway, State Bar No. 024171
2   **LEWIS LAW FIRM, PLC**
    2633 E. Indian School Road, Suite 360
3   Phoenix, AZ 85016
    Phone: (602) 889-6666
4   Fax:     (602) 889-6681
    Rob@LewisandPokora.com
5   Chris@LewisandPokora.com
    *Attorneys for Plaintiff*
6
    **In association with:**
7
    Amy M. Pokora, State Bar No. 027201
8   **POKORA LAW, PLC**
    2633 E. Indian School Road, Suite 360
9   Phoenix, AZ 85016
    Phone: (602) 889-6666
10  Fax:     (602) 889-6681
    Amy@LewisandPokora.com
11  *Attorney for Plaintiff*

12

13              **SUPERIOR COURT OF THE STATE OF ARIZONA**

14                      **COUNTY OF MARICOPA**

15  WILLIAM P. BURNETTE, a single man,

16                      Plaintiff,           No.   FC 2014-013246

17      vs.

18                                           **S U M M O N S**
    SIERRA NEVADA CORPORATION, a
19  Nevada corporation; NEW FRONTIER
    INNOVATIONS, LLC, a Delaware           If you would like legal advice from a lawyer,
20  Corporation;  JOHN and JANE DOES I      contact the Lawyer Referral Service at
    through X, fictitious individuals; ABC             602-257-4434
21  CORPORATIONS I-X, XYZ                                  or
    PARTNERSHIPS, SOLE                          www.maricopalawyers.org
22  PROPRIETORSHIPS and/or JOINT                   Sponsored by the
    VENTURES I-X, fictitious entities,       Maricopa County Bar Association
23
                        Defendants.
24

25  **THE STATE OF ARIZONA TO:       NEW FRONTIER INNOVATIONS, LLC**

26

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona – whether by direct service, by registered or certified mail, or by publication – you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of the first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorney. RCP 10(d); ARS § 12-311; RCP 5.

The names and address of Plaintiffs' attorneys are:

Robert K. Lewis
Christopher A. Treadway
Lewis Law Firm, P.L.C.
2633 E. Indian School Road
Suite 360
Phoenix, Arizona 85016

Amy M. Pokora
Pokora Law, P.L.C.
2633 E. Indian School Road
Suite 360
Phoenix, Arizona 85016.

SIGNED AND SEALED this Date: _____

Clerk of Court

**COPY**

By:_____

OCT 16 2014

Deputy Clerk

MICHAEL K. JEANES, CLERK
A. CORONA
DEPUTY CLERK

3

1   Robert K. Lewis, State Bar No. 016625
    Christopher A. Treadway, State Bar No. 024171
2   **LEWIS LAW FIRM, PLC**
    2633 E. Indian School Road, Suite 360
3   Phoenix, AZ 85016
    Phone:  (602) 889-6666
4   Fax:     (602) 889-6681
    Rob@LewisandPokora.com
5   Chris@LewisandPokora.com
    *Attorneys for Plaintiff*
6
7   **In association with:**
8   Amy M. Pokora, State Bar No. 027201
    **POKORA LAW, PLC**
9   2633 E. Indian School Road, Suite 360
    Phoenix, AZ 85016
10  Phone: (602) 889-6666
    Fax:     (602) 889-6681
11  Amy@LewisandPokora.com
    *Attorney for Plaintiff*
12
13
14          **SUPERIOR COURT OF THE STATE OF ARIZONA**
15                   **COUNTY OF MARICOPA**
16
17  WILLIAM P. BURNETTE, a single man,          No.   FC 2014-013246
18                         Plaintiff,
19          vs.                                  **COMPLAINT**
20  SIERRA NEVADA CORPORATION, a
    Nevada corporation; NEW FRONTIER
21  INNOVATIONS, LLC, a Delaware
    Corporation;  JOHN and JANE DOES I
22  through X, fictitious individuals; ABC
    CORPORATIONS I-X, XYZ
23  PARTNERSHIPS, SOLE
    PROPRIETORSHIPS and/or JOINT
24  VENTURES I-X, fictitious entities,
25                         Defendants.
26

**COPY**

OCT 1 6 2014

MICHAEL K. JEANES, CLERK
A. CORONA
DEPUTY CLERK

William Burnette, Jr, by and through counsel undersigned, and for his Complaint alleges as follows:

## PARTIES, JURISDICTION & VENUE

1.      Decedent William Burnette, III was a resident of Oklahoma County, State of Oklahoma.

2.      Decedent William Burnette, III died on October 5, 2013.

3.      Plaintiff William Burnette, Jr is a resident of Maricopa County, Arizona and is the natural father of William Burnette, III.

4.      Defendant Sierra Nevada Corporation is a Nevada corporation.

5.      Defendant Sierra Nevada is a defense contractor that performs a large variety of defense contract missions, including, not limited to, counter-narcotics surveillance flights in the Caribbean Sea and north coast of South America, and owns and operates civilian aircraft utilized in such missions.

6.      Defendant Sierra Nevada operates, conducts, engages in or carries on a business or business venture in the State of Arizona.

7.      Defendant Sierra Nevada has contact with the State of Arizona.

8.      Defendant New Frontier Innovations, LLC is a Delaware corporation.

9.      Defendant New Frontier Innovations is a defense contractor that performs a large variety of defense contract missions, including, not limited to, counter-narcotics surveillance flights in the Caribbean Sea and north coast of South America, and owns and operates civilian aircraft utilized in such missions.

10.      Defendant New Frontier Innovations operates, conducts, engages in or carries on a business or business venture in the State of Arizona.

11.      Defendant New Frontier Innovations has contacts with the State of Arizona.

12.     Defendants have caused certain acts and events to occur in Maricopa County, Arizona from which the claims asserted herein arose.

13.     This is an action for the Wrongful Death of William Burnette, III brought pursuant to and under the authority of A.R.S. § 12-611, et seq. and Plaintiff William Burnett, as the decedent's father.

14.     This Court has jurisdiction over the subject matter and over the parties to this action.

15.     Venue for this action is proper in Maricopa County Superior Court.

16.     The amount in controversy exceeds the jurisdictional limits of this Court.

## GENERAL ALLEGATIONS

17.     Plaintiff incorporates by reference paragraphs 1-16 as if fully set forth herein.

18.     Defendant Sierra Nevada was awarded a contract with the United States which required Sierra Nevada to fly surveillance counter-narcotics flights to monitor and detect aircraft, vessels and persons who are illegally transporting narcotics into the United States from places, including, but not limited to Columbia, Mexico, Panama and other countries bordering the Caribbean Sea and the north coast of South America.

19.     Defendant Sierra Nevada performed this contract through the contractor-owned, contractor operated aircraft.

20.     Defendant Sierra Nevada provides the aircraft, system maintenance and pilots.

21.     Defendant Sierra Nevada is vicariously liable for its employees, former employees and agents.

22.     Defendant New Frontier Innovations was awarded a contract with the United States which required New Frontier Innovations to fly surveillance counter-narcotics flights to monitor and detect aircraft, vessels and persons who are illegally transporting narcotics

3

into the United States from places, including, but not limited to Columbia, Mexico, Panama and other countries bordering the Caribbean Sea and the north coast of South America.

23.     Defendant New Frontier Innovations performed this contract through the contractor-owned, contractor operated aircraft.

24.     Defendant New Frontier Innovations provides the aircraft, system maintenance and pilots.

25.     Defendant New Frontier Innovations is vicariously liable for its employees, former employees and agents.

26.     On October 5, 2013, Defendants Sierra Nevada and New Frontier Innovations were performing a counter-narcotic mission.

27.     The mission utilized an aircraft, the Havilland DHC-8-202 "Prospector" aircraft, tail number (T/N N356PH) (the "Aircraft"), which was owned and operated by Defendant Sierra Nevada and/or Defendant New Frontier Innovations.

28.     The Aircraft was flying over the Caribbean Sea and land in an area along the borders of Panama and Colombia.

29.     Personnel onboard the aircraft included two pilots, a mission commander, a mission systems operator, a host national rider and a host national rider escort.

30.     The two pilots were U.S. Nationals.

31.     The mission commander and systems operator were U.S. Nationals.

32.     One of personnel was Decedent, William Burnett, III.

33.     The pilots negligently and recklessly flew the aircraft over high ground at night where it crashed.

34.     The pilots survived.

4

35.     All other persons, including Decedent, William Burnett, III, were killed in the crash.

36.     Defendant Sierra Nevada and/or New Frontiers Innovations were responsible for maintenance of the aircraft and for preparing the aircraft for the mission.

37.     The U.S. Air Force conducted an investigation of the October 5, 2013 crash.

38.     The U.S. Air Force report was issued under the provisions of Air Force Instruction 51-503.

39.     The two pilots were debriefed.

40.     Transcripts of the debriefing are contained within in the U.S. Air Force report.

41.     The author of the report found by clear and convincing evidence that the cause of the mishap was caused by the failure of the two pilots to ensure that the aircraft remained over water, which resulted in unplanned night flight over land at low altitude and subsequent controlled flight into terrain.

42.     The author if the report also found by a preponderance of the evidence that the crash was contributed to by inappropriate delegation of terrain avoidance responsibility, ineffective communication among the crew, inoperative Enhanced Ground Proximity Warning System and lack of operational oversight.

43.     The Enhanced Ground Proximity Warning System of the aircraft was inoperative during the flight.

44.     The Enhanced Ground Proximity Warning System was disabled prior to the flight.

45.     The inoperative Enhanced Ground Proximity Warning System substantially contributed to the crash.

46.     One pilot could not see out of one of his eyes.

5

47.     One pilot was not current in the Aircraft and was using the October 5, 2013 mission as training.

## COUNT ONE

### (Negligence against all Defendants)

48.     Plaintiff incorporates by reference paragraphs 1-47 as if fully set forth herein.

49.     Defendants are responsible for the flight and for the safety of all personnel on board.

50.     Defendants were responsible for the safe operation of the mission.

51.     Defendants were responsible for the maintenance and systems on board the Aircraft.

52.     Defendants owed a duty to provide a safe and well maintained Aircraft and adequate and properly trained pilots.

53.     Defendants knew or should have known as the owner and operator of the Aircraft that the Aircraft was not safe for a surveillance mission.

54.     Defendants knew or should have known that one or more pilots of the Aircraft were not fully trained and/or was not able to properly fly the Aircraft.

55.     Defendants knew or should have known that the Enhanced Ground Proximity Warning System was inoperative prior to the flight.

56.     Defendants' collective actions, omissions, and failures constitute negligence.

57.     Decedent William Burnette, III's death was caused by the negligence of Defendants.

58.     Decedent William Burnette, III is not at fault for the incident.

59.     Defendants breached their duties to Plaintiff's decedent in ways, including, but not limited to:

6

a.   Allowing the Aircraft to fly over land;

b.   Utilizing pilots who lacked experiences for the mission;

c.   Utilizing pilots who were not current;

d.   Utilizing pilots who were not fit for the mission;

e.   Failing to retain and hire appropriately trained and experienced pilots;

f.   Failing to properly train pilots;

g.   Failing to provide proper supervision for pilots and the mission;

h.   Failure of pilots to utilize accepted aviation safety protocols for aircraft control;

i.   Failure to properly maintain the aircraft'

j.   Failure to properly maintain known safety devices or terrain proximity warning devices;

k.   Failure to maintain the Aircraft over water;

l.   Inappropriate delegation of terrain avoidance responsibility;

m.   Ineffective communication;

n.   Inoperative warning systems and safety devices;

o.   Lack of operation oversight.

60.   As a result of the acts and/or omissions of Defendants and the resulting death of the Decedent, Plaintiff has suffered special damages including, but not limited to, loss of consortium, and loss of future economic support.

61.   As a result of the acts and/or omissions of Defendants and the resulting death of the Decedent, Plaintiff has suffered and continues to suffer general damages including, but not limited to, loss of consortium and support, sorrow, anguish, pain, anxiety, and shock.

7

62.     As a result of the acts and/or omissions of Defendants and the resulting death of the Decedent, Plaintiff is entitled to damages including but not limited to those under A.R.S. § 12-612, § 12-613.

WHEREFORE, Plaintiffs pray for judgment against Defendant and an award of the following:

      a.   For compensatory damages in the amount to be proven at trial'

      b.   For general damages in an amount to be proven at trial'

      c.   For attorney fees and cost, which applicable;

      d.   For pre and post judgment interest;

      e.   For such other relief as deemed appropriate by the Court.

DATED this _16 th_ day of October, 2014.

             LEWIS LAW FIRM, PLC

             By_____
             Robert K. Lewis
             Christopher A. Treadway

             In association with:

             POKORA LAW, PLC

             Amy M. Pokora
             *Attorneys for Plaintiffs*

**COPY**

OCT 16 2014



MICHAEL K. JEANES, CLERK
A. CORONA
DEPUTY CLERK

1    Robert K. Lewis, State Bar No. 016625
Christopher A. Treadway, State Bar No. 024171
2    **LEWIS LAW FIRM, PLC**
2633 E. Indian School Road, Suite 360
3    Phoenix, AZ 85016
Phone: (602) 889-6666
4    Fax:    (602) 889-6681
Rob@LewisandPokora.com
5    Chris@LewisandPokora.com
*Attorneys for Plaintiff*
6
7    **In association with:**
8    Amy M. Pokora, State Bar No. 027201
**POKORA LAW, PLC**
9    2633 E. Indian School Road, Suite 360
Phoenix, AZ 85016
10   Phone: (602) 889-6666
Fax:    (602) 889-6681
11   Amy@LewisandPokora.com
*Attorney for Plaintiff*
12
13             **SUPERIOR COURT OF THE STATE OF ARIZONA**
14                      **COUNTY OF MARICOPA**
15
16   WILLIAM P. BURNETTE, a single man,        No.   FC2014-013246
17                     Plaintiff,
18            vs.                                **CERTIFICATE OF COMPULSORY**
                                                **ARBITRATION**
19   SIERRA NEVADA CORPORATION, a
Nevada corporation; NEW FRONTIER
20   INNOVATIONS, LLC, a Delaware
Corporation; JOHN and JANE DOES I
21   through X, fictitious individuals; ABC
CORPORATIONS I-X, XYZ
22   PARTNERSHIPS, SOLE
PROPRIETORSHIPS and/or JOINT
23   VENTURES I-X, fictitious entities,
24                     Defendants.
25
26

Pursuant to Rule 72(e), Ariz.R.Civ.P., the undersigned certifies that they know the dollar limits and other limitations set forth by the Local Rules of Practice for the Superior Court and further certifies that this case is **NOT** subject to compulsory arbitration.

DATED this _ICM_ day October, 2014.

**LEWIS LAW FIRM, PLC**


By_____
Robert K. Lewis
Christopher A. Treadway
2633 E. Indian School Road
Suite 360
Phoenix, AZ  85016
*Attorneys for Plaintiffs*

In association with:

**POKORA LAW, PLC**

Amy M. Pokora
2633 E. Indian School Rd., Suite 360
Phoenix, AZ  85016
*Attorney for Plaintiffs*

2

**COPY**

OCT **1 6** 2014



MICHAEL K. JEANES, CLERK
A. CORONA
DEPUTY CLERK

1  Robert K. Lewis, State Bar No. 016625
   Christopher A. Treadway, State Bar No. 024171
2  **LEWIS LAW FIRM, PLC**
   2633 E. Indian School Road, Suite 360
3  Phoenix, AZ 85016
   Phone:  (602) 889-6666
4  Fax:     (602) 889-6681
   Rob@LewisandPokora.com
5  Chris@LewisandPokora.com
   *Attorneys for Plaintiff*
6
7  **In association with:**

8  Amy M. Pokora, State Bar No. 027201
   **POKORA LAW, PLC**
9  2633 E. Indian School Road, Suite 360
   Phoenix, AZ 85016
10 Phone:  (602) 889-6666
   Fax:     (602) 889-6681
11 Amy@LewisandPokora.com
   *Attorney for Plaintiff*
12

13           **SUPERIOR COURT OF THE STATE OF ARIZONA**

14                       **COUNTY OF MARICOPA**

15 WILLIAM P. BURNETTE, a single man,

16                    Plaintiff,              No.    FC 2014-013246

17        vs.

18 SIERRA NEVADA CORPORATION, a          **DEMAND FOR JURY TRIAL**
   Nevada corporation; NEW FRONTIER
19 INNOVATIONS, LLC, a Delaware
   Corporation;  JOHN and JANE DOES I
20 through X, fictitious individuals; ABC
   CORPORATIONS I-X, XYZ
21 PARTNERSHIPS, SOLE
   PROPRIETORSHIPS and/or JOINT
22 VENTURES I-X, fictitious entities,

23                    Defendants.

24

25

26

Plaintiff William Burnette, by and through counsel undersigned, hereby request a trial by jury on all issues in the above-captioned matter.

DATED this __1ᶜ⁄ₕ__ day October, 2014.

**LEWIS LAW FIRM, PLC**

By_____
Robert K. Lewis
Christopher A. Treadway
2633 E. Indian School Road
Suite 360
Phoenix, AZ  85016
*Attorneys for Plaintiffs*

In association with:

**POKORA LAW, PLC**

Amy M. Pokora
2633 E. Indian School Rd., Suite 360
Phoenix, AZ  85016
*Attorney for Plaintiffs*

2

Exhibit 2

James H. Marburger
Gust Rosenfeld P.L.C.
One East Washington Street, Suite 1600
Phoenix, AZ 85004-2553
602-257-7968 (direct)
602-254-4878 (fax)


Attorneys for Defendant Sierra Nevada Corporation

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| William P. Burnette, a single man, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Sierra Nevada Corporation, a Nevada Corporation; New Frontier Innovations, LLC, a Delaware Corporation | ) |
| | ) |
| Defendants. | ) |

**AFFIDAVIT OF  GREGORY J. LIVINGSTON**

GREGORY J. LIVINGSTON, being duly sworn, hereby deposes and says:

1.   I am over twenty-one years of age, of sound mind and competent to make this Affidavit, and have personal knowledge of the facts set forth herein.

2.   I am Corporate Director Legal Counsel of Sierra Nevada Corporation.  I have held this position since December, 2011.  In this position I am familiar with the business conducted by and operations of Sierra Nevada Corporation.

3.   I am familiar with the above-captioned matter and am aware that the Summons and Complaint were served on Sierra Nevada Corporation by hand on its agent for service of

1

process, Corporation Service Company, in Wilmington, Delaware on November 26, 2014.

4.  Sierra Nevada Corporation is a Nevada corporation with its principal place of business in Nevada.

FURTHER THE DEPONENT SAYETH NOT.

    I declare under penalty of perjury that the foregoing is true and correct.

_____<br>
Gregory Livingston

SWORN to and subscribed before me
this _17th_ day of _December_ , 2014.

_____

Notary Public for _WASHOE COUNTY_
My Commission Expires: _12/01/17_

Annie Nguyen
Notary Public
State of Nevada
My Commission Expires: 02-01-17
Certificate No: 13-10243-2

# Exhibit 3

1    STEPTOE & JOHNSON LLP
     201 East Washington Street, Suite 1600
2    Phoenix, Arizona 85004-2382
     Telephone: (602) 257-5200
3    Facsimile: (602) 257-5299

4    Shannon E. Trebbe (028533) (strebbe@steptoe.com)
     Attorney for Defendant New Frontier Innovations, LLC
5

6                    UNITED STATES DISTRICT COURT

7                          DISTRICT OF ARIZONA

8    William P. Burnette, a single man,        )
                                               )  No.
9                    Plaintiff,                )
                                               )  **DECLARATION OF TUSHAR**
10        vs.                                  )  **SUTHAR**
                                               )
11   Sierra Nevada Corporation, a Nevada       )
     corporation; New Frontier Innovations,    )
12   LLC, a Delaware corporation,              )
                                               )
13                   Defendant.                )

14

15        I, Tushar Suthar, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

16        1.     I am the Chief Executive Officer, President, and 100% owner of New

17   Frontier Innovations, LLC ("NFI").

18        2.     NFI is a limited liability company organized under the laws of Delaware

19   with its principal place of business in Alexandria, Virginia.

20        3.     As NFI's sole owner, I am a citizen and resident of Virginia as of the date

21   of filing of the complaint in this case.

22        4.     In this action, service of the summons and Complaint on NFI was

23   completed by hand on its agent for service of process, The Corporation Trust Company,

24   in Wilmington, Delaware on November 24, 2014.

25        5.     NFI was previously sued by the adult daughter and estate of its other

26   employee (Ralph Dietz) who perished in the October 5, 2013 airplane crash.  That case

27   was brought in federal court, and remained in federal court at all times prior to judgment

28

on the pleadings in favor of NFI.  A true and correct copy of the operative complaint in that action is attached as Exhibit 1 to this declaration.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at _Alexandria, VA_____ on December _19__, 2014.

Tushar Suthar

- 2 -

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JENNIFER MOORE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF RALPH JAMES DIETZ, DECEASED | § § § § § | |
| Plaintiff, | § § § § | |
| v. | § § § § | C.A. NO. 2:14-cv-00049 |
| SIERRA NEVADA CORPORATION, INC., AND NEW FRONTIER INNOVATIONS, LLC | § § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**JENNIFER MOORE, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF RALPH JAMES DIETZ** ("Plaintiff") files this *Second Amended Complaint* and in support thereof respectfully shows the court as follows:

### A.
### PARTIES

1.      Plaintiff is an individual residing in Wilson County, Texas and Independent Executrix of the Estate of Ralph James Dietz, Deceased.

3.      Defendant Sierra Nevada Corporation, Inc. ("Sierra Nevada") is a foreign for-profit corporation whose principal place of business and home office is in Sparks, Nevada and is therefore deemed a citizen of Nevada pursuant to 28 U.S.C. § 1332(c)(1).  Defendant may be

served with process through its registered agent for service in the State of Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

4.      Defendant New Frontier Innovations, LLC ("New Frontier") is a foreign for-profit limited liability company whose principal place of business and home office is in Alexandria, Virginia and is therefore deemed a citizen of Virginia pursuant to 28 U.S.C. §1332(c)(1).  Defendant may be served with process through its registered agent for service in the State of Texas, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

**B.**
**JURISDICTION**

6.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship as this case involves an action between citizens of different states and the amount in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000), excluding interest and costs.

7.      Additionally, all conditions precedent to this filing have now been met.

**C.**
**VENUE**

8.      Venue is proper in the Southern District of Texas – Corpus Christi Division pursuant to 28 U.S.C. § 1391(b)(3) and (e), as there is no district in which an action may otherwise be brought under 28 U.S.C. § 1391(b).

**D.**
**FACTS**

9.     Plaintiff is a beneficiary entitled to bring this action pursuant to § 71.004 of the Texas Civil Practice & Remedies Code.  Plaintiff was the daughter of RALPH JAMES DIETZ, Deceased (hereinafter referred to as "Decedent").

10.     In addition to bringing this wrongful death action pursuant to § 71.004 of the Texas Civil Practice & Remedies Code as the surviving daughter of Decedent, Plaintiff also brings this action as a Representative of the Estate of Decedent pursuant to § 71.021 of the Texas Civil Practice & Remedies Code.

11.     Decedent was employed by New Frontier as a part of an intelligence gathering operation called "Prospector," a privatized counter-narcotics operation based in Panama operated on behalf of, and for the benefit of, the United States of America and all other Central American countries.  A contract between the United States Air Force and Sierra Nevada required Sierra Nevada to provide a set amount of maritime surveillance over a designated period of time.  Upon information and belief, Sierra Nevada entered into a subcontract with New Frontier to assist with providing surveillance and manpower.  Additionally, New Frontier provided a pilot and other workers for Sierra Nevada's "Prospector" mission.  The surveillance was performed by Defendants with no oversight of training, safety, operations, or maintenance by the military, United States Air Force, Federal Aviation Administration, or any other United States governmental entity.  Oversight procedures regarding training, manpower, aircraft safety, and maintenance were the responsibility of Sierra Nevada.

12.     Initial training for the mission was provided by Sierra Nevada in the United States.  However, this initial training was hindered by program engineering delays and characterized as "insufficient" and "essentially non-existent" by participants.  During training,

Sierra Nevada provided no guidance for the integration of pilot duties, and provided poorly defined roles and responsibilities for members of the aircrew.

13.     On or about the night of October 5, 2013, Decedent was a passenger in a De Havilland Model DHC-8-202 aircraft, FAA Registration No. N356PH (hereinafter the "Aircraft"), while carrying out a mission under the above referenced surveillance operation. The aircraft was manned by two pilots. Pilot #1 was a U.S. civilian employed by Sierra Nevada Corporation, who also served as the manager for Sierra Nevada operations in Panama, and had not previously piloted an operational Prospector mission. Pilot #2 was a U.S. civilian employed by New Frontier on board the aircraft.

14.     The Aircraft had been refitted with a number of modifications and was classified as an "experimental" aircraft by the Federal Aviation Administration only to be operated for crew training and market surveys per the Aircraft's federal registration. Further, the Aircraft's enhanced ground proximity warning system ("EGPWS"), a critical piece of navigation equipment, was intentionally deactivated and the Aircraft was placed into service, with the deactivated EGPWS, in direct violation of the manufacturer's pilot operating handbook and Aircraft operational standards.

15.     Maintenance logs of the Aircraft disclose a history of recurring malfunctions of the Aircraft's EGPWS. From April 2013 to October 2013, a total of four (4) malfunctions were documented in the Aircraft maintenance logs. The final malfunction prior to the mishap was documented on October 1, 2013 as a result of an erroneous "too low gear" aural warning. After this malfunction, and three (3) days before the mishap, aircraft maintainers with Sierra Nevada deactivated the EGPWS to prevent further erroneous warnings. A Sierra Nevada A & P certified

mechanic pulled the EGPWS circuit breakers and collared them, rendering the system inoperative.

16. According to the master minimum equipment list, the Aircraft was able to take off with an inoperative EGPWS provided (i) alternate procedures were established and used; and (ii) repairs were made within two (2) flight days. Neither of these conditions was met by Sierra Nevada or New Frontier. The Aircraft was operated for three (3) subsequent days, with the mishap occurring on the third day. According to FFA regulations and the master minimum equipment list, the Aircraft should have been grounded on the day of the mishap flight.

17. A pre-flight briefing was held on October 5, 2013 approximately 90 minutes before takeoff. However, during the briefing, the crew failed to account for the disabled EGPWS. Further, the required alternate procedures to compensate for the disabled ground proximity warning system were not discussed other than Pilot #2 stating the flight "needed to stay off the land."

18. On October 5, 2013, at approximately 10:45 pm local time, the Aircraft departed a civilian, non-military, non U.S. base and began searching for vessels suspected of transporting illegal narcotics. While tracking a suspected vessel, the Aircraft unintentionally crossed the shoreline and overflew Panamanian terrain in the first of two inadvertent land incursions, with the second land incursion resulting in the Aircraft mishap.

19. The Aircraft was piloted by an individual, Pilot #2, who is legally blind in his right eye. Despite this physical limitation and safety risk, the pilot was granted special permission to fly the Aircraft by the United States and Defendants. In addition to his physical limitations, the pilot of the Aircraft lacked the expertise and training to pilot the Aircraft in its modified and "experimental" configuration.

20.   During the flight, Pilot #2 delegated responsibilities of navigation and terrain avoidance, traditional pilot duties, to the systems operator and mission commander on board the flight, despite knowing these individuals had not been trained for low level terrain navigation.

21.   Decedent was a passenger during the October 5, 2013 flight when the pilots of the Aircraft became lost and, instead of maintaining the flight plan over the ocean, flew the Aircraft over land for a second time.  The pilots lost situational awareness of the Aircraft and failed to ensure the Aircraft remained over water clear of terrain.  This failure resulted in an unplanned night flight over land at low altitude, and subsequent controlled flight into the terrain. As a result, the Aircraft crashed into a remote mountainous area of jungle near the border of Panama and Columbia. On or immediately after the impact, the fuselage of the Airplane ignited burning Decedent's body (hereinafter the "Airplane Crash").

22.   Investigators of the crash determined if the EGPWS had been enabled and operating normally, the system would have generated a warning of impending terrain impact to the pilots allowing them sufficient time to take corrective action.  Further, investigators also determined inappropriate delegation of terrain avoidance responsibility, ineffective communication among the aircrew on board the flight, and a lack of operational oversight substantially contributed to the Airplane Crash.

23.   As a direct and proximate result of the Airplane Crash, Decedent died of multiple blunt force injuries sustained in the impact, including but not limited to fatal injuries to the head and torso.  In addition to the blunt force injuries, and as a result of the fire on board the Aircraft, Decedent suffered total body charring of his soft tissue and bone.

### E.
### VICARIOUS LIABILITY – RESPONDENT SUPERIOR

24.   Whenever in this petition it is alleged that the Defendants did any act or thing, it

is meant that Defendants' officers, agents, servants, employees, or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of the Defendants.

## F.
## DEFENSE BASE ACT

25.     Plaintiff denies the Defense Base Act ("DBA") bars the causes of action set forth herein. *See* 42 U.S.C. §1651.

26.     The events that form the basis of Plaintiff's claims:

(1) did not occur at any military, air, or naval base acquired after January 1, 1940, by the United States from any foreign government;

(2) did not occur upon any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States (including the United States Naval Operating Base, Guantanamo Bay, Cuba; and the Canal Zone);

(3) are not a part of any "public work" in any Territory or possession outside the continental United States; [1]

(4) were not performed under a contract entered into with the United States for the purpose of engaging in "public work" to be performed outside the continental United States;

(5) were not performed under a contract approved and financed by the United States to be performed outside the continental United States under the Mutual

---

[1] Under the Act, the term "public work" means any fixed improvement or any project, whether or not fixed, involving construction, alteration, removal or repair for the public use of the United States or its allies, including but not limited to projects or operations under service contracts and projects in connection with the national defense or with war activities, dredging, harbor improvements, dams, roadways, and housing, as well as preparatory and ancillary work in connection therewith at the site or on the project. 42 U.S.C. §1651 (b)(1).

Security Act of 1954; and

(6) were not performed outside the continental United States by an American employer providing welfare or similar services for the benefit of the Armed Forces pursuant to appropriate authorization by the Secretary of Defense. *See id.*

### F.
### CAUSE OF ACTION: WRONGFUL DEATH

27.     Plaintiff is the adult child of Ralph James Dietz, Deceased.  As a surviving child of Ralph James Dietz, Plaintiff is entitled to pursue this action to recover from Defendants damages resulting from the wrongful death of her father, Ralph James Dietz, pursuant to Chapter 71 of the Texas Civil Practice and Remedies Code.

28.     Decedent was killed as a result of Defendants negligent and wrongful conduct more fully described in paragraphs 9 – 23, and Plaintiff incorporates those allegations herein as if set forth verbatim.

29.     Defendants owed a legal duty to Decedent to act as would a reasonable and prudent person or entity would act under similar circumstances.

30.     Defendant New Frontier, as Decedent's employer, is guilty of various acts and/or omissions, each of which, individually or in combination, constituted negligence and/or intentional conduct, including, but not limited to the following:

    i.    In failing to provide reasonable and adequate training to Defendants' employees;

    ii.    In failing to provide pilots and crews with the expertise, knowledge, and training necessary to safely conduct the mission;

    iii.    In failing to reasonably and adequately screen pilots, crews, and workers for flight-ready status;

    iv.    In failing to perform a reasonable and adequate medical examination of the Aircraft's pilots, crews, and workers;

v.   In failing to develop, institute, and enforce reasonable policies, practices, procedures, and guidelines for the mission;

vi.  In failing to provide pilots and crews with the expertise, knowledge, and training necessary to operate the Aircraft in its modified and "experimental" configuration;

vii. In failing to develop, institute and enforce reasonable policies, practices, procedures and guidelines for the hiring, training, supervision and retention of Defendants' employees and/or contractors;

viii. In failing to reasonably inspect the Aircraft for safety and/or security hazards or dangers;

ix.  In allowing the Aircraft to remain operational when Defendants had actual subjective awareness that the Aircraft systems defects precluded use of the Aircraft and failing to properly oversee operational activities as to avoid conflicts regarding improper use and operation of the Aircraft; and

x.   For vicarious negligence of its employees regarding operating the Aircraft in a manner as to allow controlled flight into conflicting terrain.

31.   Defendant Sierra Nevada, as owner of the Aircraft, and employer of the Aircraft's staff, including but not limited to pilots, crew, maintenance workers, is guilty of various acts and/or omissions, each of which, individually or in combination, constituted negligence and/or intentional conduct, including, but not limited to the following:

i.   In failing to provide reasonable and adequate training to Defendants' employees;

ii.  In failing to reasonably and adequately screen pilots, crews, and workers of the Aircraft for flight-ready status;

iii. In failing to perform a reasonable and adequate medical examination of the Aircraft's pilots, crews, and workers;

iv.  In failing to develop, institute, and enforce reasonable policies, practices, procedures, and guidelines for the mission;

v.   In failing to provide pilots and crews with the expertise, knowledge, and training necessary to safely conduct the mission;

vi.    In failing to provide pilots and crews with the expertise, knowledge, and training necessary to operate the Aircraft in its modified and "experimental" configuration;

vii.    In failing to develop, institute and enforce reasonable policies, practices, procedures and guidelines for the hiring, training, supervision and retention of Defendants' employees and/or contractors;

viii.    In failing to reasonably inspect the Aircraft for safety and/or security hazards or dangers;

ix.    In failing to develop, institute and enforce reasonable policies, practices procedures and guidelines for maintaining the Aircraft in a reasonably safe manner;

x.    In failing to properly and safely maintain the Aircraft safety equipment, including, but not limited to, the Aircraft's enhanced ground proximity warning system;

xi.    In failing to properly conduct oversight of the Aircraft maintenance;

xii.    In failing to properly manage the Aircraft, Sierra Nevada's pilot(s), crews, and employees;

xiii.    In failing to make proper "Go"/ "No Go" flight decisions regarding the Aircraft;

xiv.    In failing to conduct proper operational oversight regarding the Aircraft and/or mission;

xv.    In operating the Aircraft during a period and under circumstances when it should have been grounded;

xvi.    In failing to follow FAA regulations, including but not limited to, the grounding of the aircraft after two (2) flight days without a properly function enhanced ground proximity warning system; and

xvii.    For vicarious negligence of its employees regarding operating the Aircraft in a manner as to allow controlled flight into conflicting terrain.

32.    Defendants' breach of duty proximately caused the needless and senseless death of Decedent.

32. Defendants' conduct caused Decedent's death and was the producing cause of damage and injury to Mr. Dietz and Plaintiff.

## G.
## GROSS NEGLIGENCE

33. Defendant New Frontier and Sierra Nevada's conduct constitutes gross negligence and/or intentional conduct, as more fully described in paragraphs 9 – 23, and Plaintiff incorporates those allegations herein as if set forth verbatim. In this regard, there is clear and convincing evidence that Defendants New Frontier and Sierra Nevada (i) intentionally disabled the Aircraft's enhanced ground proximity warning system, (ii) commanding the Aircraft with an individual who is legally blind in his right eye, and (iii) allowed operation of the Aircraft under circumstances where the Aircraft was, by definition, not "airworthy" and should have been grounded. These intentional acts, when viewed objectively from Defendants New Frontier and Sierra Nevada's standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff and others, of which Defendants New Frontier and Sierra Nevada had actual, subjective awareness, but nevertheless proceeded with conscious indifference to the rights, safety and welfare of Plaintiff and others.

34. Defendants New Frontier and Sierra Nevada's gross negligence and/or intentional conduct were a proximate cause of the crash, which caused Decedent's death and was the producing cause of damage and injury to Plaintiff.

## H.
## CAUSE OF ACTION: SURVIVAL ACTION/ WRONGFUL DEATH

35. Plaintiff is an heir and independent executrix to the Estate of Ralph James Dietz. As a direct and proximate result of the Airplane Crash, Decedent suffered an eternity of pain and emotional anguish which no person should ever experience and as such has numerous causes of

action, which are hereby brought by an heir of his estate, namely Plaintiff under § 71.021 of the Texas Civil Practice & Remedies Code.

36.    Decedent was killed as a result of Defendant's negligent and wrongful conduct, more fully described in paragraphs 9 – 23, and Plaintiff incorporates those allegations herein as if set forth verbatim.

37.    Defendants owed a legal duty to Decedent to act as would a reasonable and prudent person or entity would act under similar circumstances.

38.    Defendants, as owner of the Aircraft, in their "oversight" capacity and as employers of the Aircraft's staff, including but not limited to pilots, crew, maintenance workers, are guilty of various acts and/or omissions, each of which, individually or in combination, constituted negligence and/or intentional conduct, including, but not limited to the following:

      i.    In failing to provide reasonable and adequate training to Defendants' employees;

      ii.    In failing to reasonably and adequately screen pilots, crews, and workers of the Aircraft for flight-ready status;

      iii.    In failing to perform a reasonable and adequate medical examination of the Aircraft's pilots, crews, and workers;

      iv.    In failing to develop, institute, and enforce reasonable policies, practices, procedures, and guidelines for the mission;

      v.    In failing to provide pilots and crews with the expertise, knowledge, and training necessary to safely conduct the mission;

      vi.    In failing to provide pilots and crews with the expertise, knowledge, and training necessary to operate the Aircraft in its modified and "experimental" configuration;

      vii.    In failing to develop, institute and enforce reasonable policies, practices, procedures and guidelines for the hiring, training, supervision and retention of Defendants' employees and/or contractors;

      viii.    In failing to reasonably inspect the Aircraft for safety and/or security hazards or dangers;

ix.  In failing to develop, institute and enforce reasonable policies, practices procedures and guidelines for maintaining the Aircraft in a reasonably safe manner;

x.  In failing to properly and safely maintain the Aircraft safety equipment, including, but not limited to, the Aircraft's enhanced ground proximity warning system;

xi.  In failing to properly conduct oversight of the Aircraft maintenance;

xii.  In failing to properly manage the Aircraft, Sierra Nevada's pilot(s), crews, and employees;

xiii.  In failing to make proper "Go"/ "No Go" flight decisions regarding the Aircraft;

xiv.  In failing to conduct proper operational oversight regarding the Aircraft and/or mission;

xv.  In operating the Aircraft during a period and under circumstances when it should have been grounded;

xvi.  In failing to follow FAA regulations, including but not limited to, the grounding of the aircraft after two (2) flight days without a properly function enhanced ground proximity warning system; and

xvii.  For vicarious negligence of its employees regarding operating the Aircraft in a manner as to allow controlled flight into conflicting terrain.

39.  Defendants' breach of duty proximately caused the needless and senseless death of Decedent.

40.  Defendants' conduct caused Decedent's death and was the producing cause of damage and injury to Mr. Dietz and Plaintiff.

# I.
## DAMAGES

41.  As a direct and proximate result of Defendants' negligence, Plaintiff's father, the Decedent, died on October 5, 2013.  As a result of the untimely death of Decedent, Plaintiff suffered pecuniary loss for the death of her father.  Additionally, Plaintiff suffered the loss of

companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that Plaintiff, in reasonable probability, would have received from RALPH JAMES DIETZ had he lived. Moreover, the untimely death of her father has caused Plaintiff severe emotional pain, torment, and suffering.

42.     In all reasonable probability, Plaintiff will continue to suffer pecuniary losses, loss of companionship and society, and severe emotional pain, torment, and suffering in the future. At the time of his death, Decedent was 66 years old and had a life expectancy of at least 12 additional years according to the Standard Ordinary Tables of Mortality.

43.     In addition to seeking recovery for the damages, as set out above, Plaintiff seeks recovery of damages on behalf of the Estate of Ralph James Dietz, Deceased for the conscious pain, suffering, and mental anguish Mr. Dietz experienced both immediately before and following the airplane crash and fire, and prior to his death. By reason of the above, Plaintiff and Decedent have suffered losses and damages in a sum that is within the jurisdictional limits of the Court and for which they hereby sue.

## J.
## PUNITIVE DAMAGE CLAIM AGAINST SIERRA NEVADA

44.     In addition to all of the above, and by reason of the parties' intentional conduct which has occurred regarding this matter, Plaintiff asserts that Defendant Sierra Nevada is liable for punitive damages as a result of the Defendant Sierra Nevada's intentional acts and/or gross negligence resulting in injury to Plaintiff. Accordingly, Plaintiff requests that the Court award punitive damages as a result of the Defendant Sierra Nevada's conduct.

## K.
## PUNITIVE DAMAGE CLAIM AGAINST NEW FRONTIER

45.     In addition to all of the above, and by reason of the parties' intentional conduct which has occurred regarding this matter, Plaintiff asserts that Defendant New Frontier is liable

for punitive damages as a result of the Defendant New Frontier's intentional acts and/or gross negligence resulting in injury to Plaintiff. Accordingly, Plaintiff requests that the Court award punitive damages as a result of the Defendant New Frontier's conduct.

## L.
## CONDITIONS PRECEDENT

46. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## M.
## JURY DEMAND

47. Plaintiff demands a jury trial and tenders the appropriate fee with this Complaint.

## N.
## PRAYER

48. For these reasons, Plaintiff asks that the Court issue citation for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

i. Judgment against the Defendants jointly and severally, for a sum within the jurisdictional limits of the Court;

ii. Pre-judgment and post-judgment interest at the maximum amount provided by law;

iii. Court Costs;

iv. All other relief to which Plaintiff is justly entitled in law or equity.

Respectfully submitted,

**CURNEY, FARMER,**
**HOUSE, & OSUNA, P.C.**
411 Heimer Road
San Antonio, Texas 78232-4854
Telephone No. (210) 377-1990
Facsimile No. (210) 377-1065

By: ___/s/ John M. Curney, Jr.___

**John M. Curney, Jr.**
State Bar No. 05258600
Southern District of Texas No. 17912
Email: john@cfholaw.com

**P. Weston May**
State Bar No. 24070229
Southern District of Texas No. 1085510
Email: wmay@cfholaw.com

*Attorney for Plaintiff Jennifer Moore, Individually,*
*and as Representative of the Estate of Ralph James*
*Dietz, Deceased*

## CERTIFICATE OF SERVICE

I hereby certify the foregoing document has been filed with the CM/ECF filing system pursuant to the electronic filing requirements of the United States District Court for the Southern District of Texas on this the 28th day of May, 2014, which provides for service via CM/ECF on all counsel of record in accordance with the electronic filing protocols in place.

/s/ John M. Curney, Jr.
JOHN M. CURNEY, JR.

Exhibit 4

2012 WL 6608291                                                                      Page 1

2012 WL 6608291 (Ariz.Super.)

For Opinion See 2012 WL 5815396 (Trial Order), 2012 WL 5815395 (Trial Order), 2012 WL 5815391 (Trial Order), 2012 WL 5815392 (Trial Order), 2012 WL 5815291 (Trial Order), 2012 WL 5815394 (Trial Order)

Copyright (c) 2012 Thomson Reuters/West

WEST'S JURY VERDICTS - ARIZONA REPORTS

Jury Awards $2.7M for Fatal MVA

Superior Court of Arizona, Maricopa County.

**Odom v. Am. Home Maint**.

**Type of Case:**
Wrongful Death • Adult
Vehicle Negligence • Pedestrian
Vehicle Negligence • Excessive Speed
Vehicle Negligence • Inattention
Negligent Hiring & Supervision • Negligent Hiring
Negligent Hiring & Supervision • Negligent Supervision
Vicarious Liability
**Specific Liability:** Negligent driving by employee resulted in vehicle fatally striking motorist standing near disabled vehicle

**General Injury:** Death; medical expenses

**Jurisdiction:**
State: Arizona
County: Maricopa

**Related Court Documents:**
Plaintiff's complaint: 2011 WL 9382043
Joint pretrial statement: 2012 WL 5510807
Verdict form: 2012 WL 5508160
Judgment: 2012 WL 5815396

**Case Name:** Joshua A. Odom, surviving husband, in his individual capacity and on behalf of Irene Burgess and George Tavares, Jr., surviving parents v. American Home Maintenance Inc., Jesse Michael Matte, a single man, John and Jane Does I-X, and Black and White Corporations/Partnerships I-X
**Docket/File Number:** CV2011-093822

**Verdict:** Plaintiffs, $2,718,695.00; reduced in judgment to $2,174,956.00 for fault apportionment

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Verdict Range:** $2,000,000 - 4,999,999

**Verdict Date:** Aug. 30, 2012

**Judge:** Emmet Ronan

**Attorneys:**
Plaintiffs: Drew M. Gully and Ryan J. Linder, Linder & Gully, Tempe, Ariz.
Defendants: Andrew R. Peshek, Garrey, Woner, Hoffmaster & Peshek, Scottsdale, Ariz.

**Trial Type:** Jury
**Breakdown of Award:**
$2,518,695.00 to plaintiff Odom
$200,000.00 to statutory beneficiary Irene Burgess
The defendant Matte was found 45 percent at fault; defendant American Home Maintenance was found 35 percent at fault; the decedent Renee Taveres- Burgess was found 20 percent at fault.
Odom's award was reduced to $2,014,956 and Burgess' award was reduced to $160,000 pursuant to the fault apportionment.

**Summary of Facts:**

Renee Taveres-Burgess, 31, was reportedly attending to her disabled motor vehicle on the east side of North McClintock Road, between the loop 202 and McKellips Road, March 1 2010 at approximately 8:00 a.m., when she was struck by a 2008 Chevrolet pickup/service vehicle operated by Jesse Michael Matte in the scope of employment with American Home Maintenance.

Taveres-Burgess was purportedly caused to "fly into the air" and came to rest in the center northbound lane and suffering fatal injuries.

Her spouse, Joshua Odom, on his individual behalf and on behalf of Taveres-Burgess' surviving parents Irene Burgess and George Tavares, Jr., filed a claim in the Maricopa County Superior Court against American Home Maintenance and Matte. The plaintiffs made allegations against Matte for negligence and against American Home Maintenance for *respondeat superior* and negligence. They contended Matte was inattentive to the road, was speeding, and following the vehicle ahead too closely and was looking at his GPS unit rather than traffic conditions. The plaintiffs sought judgment for special, general and exemplary/punitive damages as well as medical and funeral expenses.

American Home Maintenance sought summary judgment on grounds the plaintiff failed to prove it breached its duty and fell below the standard of care by hiring, training and allowing Matte to drive the company vehicle. The defendant contended it performed full driving history checks and fully pre-qualified and trained its employees.

American Home Maintenance and Matte disputed the plaintiffs entitlement to punitive damages on grounds it would be necessary to prove wrongful conduct was guided by evil motive. They also claimed Tavares-Burgess and Odom were aware the vehicle was low on gas and chose not to re-fill it before drivivng more than 30 miles.

A jury convened before Judge Emmet Ronan returned a verdict Aug. 30, 2012. The panel awarded $2,518,695.00 to plaintiff Odom and $200,000 to statutory beneficiary Irene Burgess. Defendant Matte was

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 2:14-cv-02761-JWS   Document 1   Filed 12/23/14   Page 53 of 71

found 45 percent at fault, defendant American Home Maintenance was found 35 percent at fault and Rene Taveres-Burgess was found 20 percent at fault.

Judgment was entered Oct. 24. The plaintiff Odom's award was reduced to $2,014,956 and Burgess' award was reduced to $160,000 pursuant to the fault apportionment. The court also awarded Odom taxable costs in the amount of $11,360.90.

Court: Superior Court of Arizona, Maricopa County.

2012 WL 6608291 (Ariz.Super.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2010 WL 3010775

2010 WL 3010775 (Ariz.Super.)

Copyright (c) 2012 Thomson Reuters/West

WEST'S JURY VERDICTS - ARIZONA REPORTS

$300K Verdict in Fatal Motorcycle Collision Near Arrowhead Mall

Superior Court of Arizona, Maricopa County.

**Santoyo v. Groff**

**Type of Case:**
Wrongful Death • Adult
Vehicle Negligence • Motor Vehicle v. Motor Vehicle
Vehicle Negligence • Motorcycle
Vehicle Negligence • Right-of-Way
Vehicle Negligence • Intersection

**Specific Liability:** Motorist turned left from the right turn lane, causing a collision and fatal injuries to motorcyclist

**General Injury:** Death; anxiety

**Jurisdiction:**
State: Arizona
County: Maricopa

**Related Court Documents:**
Plaintiff's complaint: 2008 WL 7985480
Final jury instructions: 2010 WL 2832768
Verdict form: 2010 WL 2832106

**Case Name:** Juan J. Santoyo, surviving father of Adrain, a/k/a Adrian J. Santoyo, deceased, both individually and on behalf of Tina Garcia-Noriega, surviving mother v. Joan W. Groff and John A. Groff, wife and husband; John Does I-V; ABC Partnerships I-V; and XYZ Corporations I-V
**Docket/File Number:** CV2008-051297

**Verdict:** Plaintiff Juan Santoyo, $300,800.00

**Verdict Range:** $200,000 - 499,999

**Verdict Date:** May 7, 2010

**Judge:** Michael McVey

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Attorneys:**
Plaintiff: Craig A. Knapp and Dana R. Roberts, Knapp & Roberts, Scottsdale, Ariz.
Defendants: Benjamin C. Thomas, Thomas, Thomas & Markson, Phoenix, Ariz.

**Trial Type:** Jury
**Breakdown of Award:**
$150,400.00 to plaintiff Juan Santoyo for full damages
$150,400.00 to plaintiff Tina Garcia-Noriega for full damages
The jury found the decedent 20 percent at fault and defendant Joan Groff 80 percent at fault.

**Summary of Facts:**

Adrian Santoyo drove his Kawasaki motorcycle north at the four-way stop intersection of North 79th Avenue and the north entrance/exit of Arrowhead Mall in Glendale, Ariz., on the afternoon of Dec. 2, 2007. He was reportedly wearing a helmet.

At the same time Joan Groff drove a grey Ford Escort west in the right turn only lane of the mall entrance/exit and came to a halt at the stop sign.

Groff allegedly attempted a left turn from the right lane as the motorcyclist proceeded through the intersection. The vehicles collided. Santoyo died two days later, allegedly due to multiple blunt force injuries sustained in the collision.

Juan Santoyo, as Adrian's surviving father and on behalf of the decedent's mother, Tina Garcia-Noriega, sued Groff and her husband John Groff, along with fictitiously named individuals, partnerships and corporations in the Maricopa County Superior Court.

The plaintiff brought wrongful death and negligence *per se* allegations, arguing Joan failed to yield the right-of-way. The plaintiff sought damages for funeral expenses and the alleged deprivation of love, affection and companionship of their son. Juan also sought relief for past and future personal outrage, anguish, discomfort, anxiety and sorrow.

The case proceeded to jury trial where a Maricopa County jury before Judge Michael McVey returned a verdict May 7, 2010, in favor of the parents, as Juan and Garcia-Noriega each collected $150,400 in full damages.

The jury apportioned fault at 20 percent for Adrian and 80 percent for Joan.

Court: Superior Court of Arizona, Maricopa County.

2010 WL 3010775 (Ariz.Super.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

2005 WL 3730612                                                                                    Page 1

2005 WL 3730612 (Ariz.Super.)

For Opinion See 2009 WL 3636868 (Trial Order), 2005 WL 4934187 (Trial Order), 2005 WL 4934188 (Trial
Order), 2005 WL 5340320 (Trial Order), 2005 WL 4934189 (Trial Order), 2005 WL 5340319 (Trial Order),
2004 WL 5274624 (Trial Order), 2004 WL 5274625 (Trial Order)

Copyright (c) 2012 Thomson Reuters/West

WEST'S JURY VERDICTS - ARIZONA REPORTS

Man Dies in MVA Fire on I-60; Parents Collect $500K

Superior Court of Arizona, Maricopa County.

**Girouard v. Skyline Steel**

**Type of Case:** Wrongful death/motor vehicle accident
**General Liability:** Negligence
**Specific Liability:** Negligent driving, and failure to maintain a good speed, keep a proper lookout and control
vehicle resulted in a rear-end collision that caused van to erupt into flames, killing motorist

**General Injury:** Death, monetary damages

**Jurisdiction:**
State: Arizona
County: Maricopa

**Related Court Documents:**
Plaintiffs' expert witness Kohlmeier's report: 2004 WL 3606919
Defendants' answer: 2004 WL 3584597
Plaintiff Cathy Girouard's first amended complaint: 2004 WL 3584598
Joint pretrial statement: 2005 WL 3092843
Jury instructions: 2005 WL 3095485
Verdict form: 2005 WL 3095460

**Case Name:** Cathy Girouard, surviving parent of Nicholas D. Girouard v. Skyline Steel Inc. and Skyline Steel
Fabrications Inc., Arizona corporations; Theodore J. Girouard III, surviving father of Nicholas D. Girouard, de-
ceased, for and on behalf of himself v. Skyline Steel Inc. and Skyline Steel Industrial Fabrications Inc., Arizona
corporations; John Swisher and Jane Doe Swisher, his wife
**Docket/File Numbers:** CV2004-003056 and CV2004-013408

**Verdict:** Plaintiffs, $500,000.00

**Verdict Range:** $500,000 - 999,999

**Verdict Date:** Sept. 29, 2005

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Judge:** Donald Daughton

**Attorneys:**
Plaintiff (Cathy Girouard): Steven D. Copple and Robert S. Murphy, Copple, Boehm & Murphy, Phoenix, Ariz.
Plaintiff (Theodore Girouard): Brian R. Warnock, Warnock, Mackinla & Associates
Defendants: Dean R. Cox and Daniel E. Fredenberg, Douglas & Cox, Phoenix, Ariz.

**Trial Type:** Jury

**Experts:**
Plaintiffs: R.E. Kohlmeier, M.D., coroner/pathologist
Defendants: None mentioned

**Breakdown of Award:**
$250,000.00 to plaintiff Theodore Girouard for damages
$250,000.00 to plaintiff Cathy Girouard for damages

**Summary of Facts:**

Nicholas Girouard died a "horrific, senseless and fiery death" Jan. 19, 2004, following a rear-end collision on Interstate 60 in Tempe, Ariz., according to his mother, Cathy. He was 29.

Cathy Girouard said her son was on his way to work as a certified heavy equipment operator when he encountered "a massive traffic backup" on I-60. Nicholas Girouard slowed to a stop. John Swisher was driving a crane truck owned by his employer, Skyline Steel Inc., behind Girouard. Swisher hit the rear-end of Girouard's van while traveling at a high rate of speed, Cathy Girouard said.

The impact ruptured the van's fuel system, which ignited and spread rapidly, trapping the decedent inside the vehicle, Cathy Girouard said. According to a coroner's report, Nicholas Girouard died from thermal and inhalation injuries.

Girouard was a five-year Navy veteran, according to his mother, and was buried in the Arizona National Memorial Cemetery.

Girouard's parents filed separate lawsuits in the Maricopa County Superior Court against Swisher and Skyline. The decedent's wife and daughter joined the lawsuit.

Shortly before the accident, other Skyline employees in a Ford F550 vehicle near Swisher's truck were gesturing back and forth with Swisher, Cathy Girouard's complaint said. Skyline failed to monitor the actions of its employees and the defendants "consciously disregarded" the risk of harm to the decedent and others, the complaint said; therefore, Skyline is liable to pay punitive damages.

The defendants admitted Swisher's negligent driving caused the accident but disputed the plaintiffs' punitive damages claim, saying Swisher did not "consciously disregarded" the risk of harm to the decedent and others. The defendants denied the plaintiffs' claimed injuries and damages, according to the answer.

The plaintiffs' punitive damages claim was dismissed in April 2005.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

According to the court docket, the decedent's wife and daughter settled their claims, and the court granted a motion to preserve the confidentiality of that agreement in June.

Considering the remaining plaintiffs' damages claims, a Superior Court jury awarded Cathy and Theodore Girouard $250,000 each in September.

Court: Superior Court of Arizona, Maricopa County.

2005 WL 3730612 (Ariz.Super.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

2008 WL 1699226 (Ariz.Super.)
For Opinion See 2008 WL 779156 (Trial Order)

Copyright (c) 2012 Thomson Reuters/West

WEST'S JURY VERDICTS - ARIZONA REPORTS

$600K Award for Fatal State Rte. 85 Collision

Superior Court of Arizona, Pima County.

**Durrenberger v. Pioneer Industries, Inc**.

**Type of Case:**
Vehicle Negligence • Motor Vehicle v. Motor Vehicle
Vehicle Negligence • Rear-End
Vehicle Negligence • Left Turn
Vehicle Negligence • Centerline Violation
Vehicle Negligence • Negligent Entrustment-Vehicle
Vehicle Negligence • Passenger
Wrongful Death • Adult

**Specific Liability:** Negligent driving of flatbed truck and employer's negligent entrustment caused collision resulting in injuries and death

**General Injury:** Death, unspecified physical injuries

**Jurisdiction:**
State: Arizona
County: Pima

**Related Court Documents:**
Plaintiffs' amended complaint: 2007 WL 5021663
Defendants' answer to Hoag and Larson's complaint: 2007 WL 5021662
Joint pretrial statement: 2008 WL 752713
Jury instructions: 2008 WL 752712
Judgment: 2008 WL 779156

**Case Name:** Charles Durrenberger, the surviving father of Gary Durrenberger, in his own right and on behalf of all statutory beneficiaries, including Laura Durrenberger, surviving mother and statutory beneficiary, David Hoag, a single man; Derek Larson, a single man v. Pioneer Industries, a New Mexico business enterprise and Randall Tabaha and Jane Doe Tabaha, Arizona residents, et al.
**Docket/File Number:** C-2006-2958 (consolidated)

**Verdict:** Plaintiffs Charles and Laura Durrenberger, $600,000, later reduced to $240,000 per fault apportionment

**Verdict Range:** $500,000 - 999,999

**Verdict Date:** Jan. 28, 2008

**Judge:** Michael O. Miller

**Attorneys:**
Plaintiffs (Durrenberger): John P. Leader, Leader & Lautz, Tucson, Ariz.; David J. Dwyer, Law Office of David J. Dwyer, Tucson, Ariz.
Plaintiff (Hoag & Larson): David J. Dwyer, Ciaccio & Dwyer, Tucson, Ariz.
Defendants: Les S. Tuskai, David L. Myles and Peter Boyle, Jones, Skelton & Hochuli, Phoenix, Ariz.

**Trial Type:** Jury

**Experts:**
Plaintiffs: Timothy Leggett, accident reconstructionist, Scottsdale, Ariz.
Defendants: None mentioned

**Breakdown of Award:**
$300,000.00 to plaintiff Charles Durrenberger against Pioneer Industries, later reduced to $120,000.00 per fault apportionment
$300,000.00 to plaintiff Laura Durrenberger against Pioneer Industries, later reduced to $120,000.00 per fault apportionment
$0 to plaintiff David Hoag
$0 to plaintiff Derek Larson
40 percent of the relative degree of fault was assigned to defendant Pioneer Industries
60 percent of the relative degree of fault was assigned to plaintiff Gary Durrenberger

**Summary of Facts:**

Gary Durrenberger was driving a white Mazda coupe June 1, 2004 northbound on State Route 85 near mile post 75 in Organ Pipe Cactus National Monument. His vehicle collided with a 1992 International Flatbed truck driven by Randall Tabaha. Tabaha was driving within the scope of his employment with Pioneer Industries. David Hoag and Derek Larson were passengers in Durrenberger's vehicle. Gary Durrenberger was killed and Hoag and Larson were injured as a result of the collision.

David Hoag, Derek Larson and Charles Durrenberger and Laura Durrenberger, surviving parents of Gary Durenberger, sued Pioneer Industries and Tabaha in Pima County Superior Court Nov. 2, 2007. They alleged Tabaha made an unsafe left-hand turn with tail lights too dirty for Gary to see. Hoag and Larson alleged they sustained severe permanent injuries, suffering and anxiety. The plaintiffs also alleged Pioneer Industries negligently entrusted the vehicle to Tabaha and failed to properly inspect the vehicle in order to maintain it in a safe condition by allowing dirty signal covers and lack of rear-impact guard, improper truck registration and the use of an untrained driver. The plaintiffs sought compensatory and punitive damages.

Pioneer and Tabaha alleged Gary Durrenberger had attempted an illegal left passing over a double yellow line

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

and was therefore fully or contributorily responsible for the collision. They asserted the plaintiffs' expert witness testified the skid marks from Durrenberger's vehicle indicated he had started to skid at 130 feet behind the truck and the legal visibility distance is 100 feet.

Charles and Laura Durrenberger filed a motion for summary judgment against Pioneer on the issues of negligence *per* se, causation and fault.

A jury convened before Judge Michael O. Miller returned a verdict Jan. 28, 2008 in favor for the plaintiffs Charles and Laura Durrenberger against Pioneer. The panel assigned 40 percent of the relative degree of fault to Pioneer and 60 percent to Gary Durrenberger. Charles and Laura were each awarded $300,000 in damages. The jury did not award damages to plaintiffs Hoag and Larson.

The Durrenbergers filed a motion for an additional $950,000 to be added to each of their jury awards.

Judge Miller entered judgment Feb. 29 for plaintiff Charles Durrenberger in the amount of $120,000 and $120,000 to Laura Durrenberger.

Court: Superior Court of Arizona, Pima County.

2008 WL 1699226 (Ariz.Super.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

1987 WL 365239

1987 WL 365239 (Ariz.Super.)

Copyright (C) 2012 by Association of Trial Lawyers of America

Superior Court of Arizona, Maricopa County.

SHAW v. SOUTHWEST TRUCK SERVICE, INC.

No. 85047.001

No Date Given

TOPIC: AUTOMOBILE ACCIDENTS

SUMMARY:
Verdict: $ 400,000

ATTORNEY(S):
Plaintiff(s): Lucia, Anthony R.: Phoenix, AZ Phoenix, Bill Andrews: Phoenix, AZ

RANGE AMOUNT: $200,000-499,999

STATE: Arizona
COUNTY: Maricopa

TYPE OF INJURY: WRONGFUL DEATH :

SUMMARY:
Plaintiff Information:
Age: 17 Years

FACTS:

Overview: Stanley, 19, and Truner, 17, were killed instantly when their truck, driven by Stanley, ran into the back of an illegally parked tractor - trailer. Wilson, defendant's driver, had become tired and had illegally parked his tractor - trailer in a highway emergency lane, keeping his lights on but not placing warning devices near the truck to alert motorists. Stanley, after passing another car, ran into the parked tractor - trailer. The jury awarded $400,000 to the parents of each of the decedents.

Association of Trial Lawyers of America

Ariz., Maricopa County Superior Court, No. 85047.001, (1987)

1987 WL 365239 (Ariz.Super.)

END OF DOCUMENT

Exhibit 5

Westlaw.

JVR No. 13909 (Unknown State Ct. (Tex.)), 1987 WL 231922

Copyright (c) 2012 Thomson Reuters/West

Unknown Texas State Ct.

ELLIS v. DELTA AIRLINES

4-86-632 K

DATE OF INCIDENT: August, 1985

DATE OF TRIAL: May, 1987

TOPIC:
LIABILITY:
General: AIRLINE NEGLIGENCE
Specific: Crash

SUMMARY
Outcome: Plaintiff Verdict
Non Verdict Award: $365,000
Total Verdict: $365,000
Final Demand: $900,000
Final Offer: $400,000

EXPERT-WITNESSES:

ATTORNEY:
Defendant: Jim Cousar of Thompson & Knight, Austin, TX.

RANGE AMOUNT: $200,000-499,999

STATE: Texas
COUNTY: Tarrant

PRIMARY INJURY: Death

SUMMARY
PLAINTIFF:
Sex: Male
Race: Black
General Occupation: STUDENT

DECEDENT:
Sex: Male

DEFENDANT:
Type: Single Organization
Sex: Organization
Organization Type: Transportation-Air, Passenger

DAMAGES:
Other: $190,000
Total: $190,000
Loss of Services: $175,000
Loss of Services By: Parent / Guardian

FACTS:

A black male computer engineer student was killed in a 1985 Delta flight 191 plane crash at Dallas / Ft. Worth airport. The decedent's mother brought suit against the airline for negligence and the jury awarded her $175,000 for loss of companionship, $90,000 for past and future mental anguish, and $100,000 for pecuniary loss. The plaintiff contended that she was very close to her son and without the financial support of a father, her son's economic future upon college graduation would have been excellent.

Jury Verdict Research

COURT:

JVR No. 13909 (Unknown State Ct. (Tex.)), 1987 WL 231922

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

JVR No. 15339 (E.D.Pa.), 1988 WL 367320

Copyright (c) 2012 Thomson Reuters/West

United States District Court, E.D. Pennsylvania.

SCHOFIELD v. PIPER AIRCRAFT COMPANY

N/A

DATE OF INCIDENT: November, 1985

DATE OF TRIAL: March, 1988

TOPIC:
LIABILITY:
General: PRODUCTS LIABILITY
Specific: Aircraft part

SUMMARY
Outcome: Plaintiff Verdict
Non Verdict Award: $4,503,000
Total Verdict: $4,503,000
Final Demand: $1,800,000
Final Offer: $600,000
Claimed Past Wage Expense: $68,000
Claimed Future Wage Expense: $5,000,000

EXPERT-WITNESSES:

ATTORNEY:
Plaintiff: Arthur Alan Wolk, Philadelphia, PA.
Defendant: Dechert, Price, et al. George Miller, Philadelphia, PA.

JUDGE: N/A

RANGE AMOUNT: $2,000,000-4,999,999

STATE: Pennsylvania
COUNTY: Not Applicable

PRIMARY INJURY: Death

SUMMARY
PLAINTIFF:
Sex: Male

Age: 24
General Occupation: PROFESSIONAL
Occupational Field: TRANSPORTATION-AIR, PASSENGER

DECEDENT:
Sex: Male

DEFENDANT:
Type: Single Organization
Sex: Organization
Organization Type: Manufacturing-Transportation Equipment

DAMAGES:
Other: $4,000,000
Total: $4,000,000
Loss of Services: $503,000
Loss of Services By: Parent / Guardian

FACTS:

A 24-year-old male airplane pilot was killed when the flap bellcrank assembly on his plane failed in flight, causing him to lose control of the plane and crash. The decedent's plaintiff asserted that the manufacturer of the aircraft was aware that the component was dangerous because of prior incidents of its failure and warnings from the Federal Aviation Administration and the Civil Aviation Authority of Great Britian. The decedent's parents received $503,000 for the loss of their son's services. The plaintiff's annual earnings at the time of death was $22,000.

Jury Verdict Research

COURT:

JVR No. 15339 (E.D.Pa.), 1988 WL 367320

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

JVR No. 15203 (Unknown State Ct. (Cal.)), 1987 WL 231591

Copyright (c) 2012 Thomson Reuters/West

Unknown California State Ct.

POWELL, ESTATE OF v. PAN AMERICAN WORLD AIRWAYS, INC.

CV 83-4410 LTL

DATE OF INCIDENT: July, 1982

DATE OF TRIAL: April, 1987

TOPIC:
LIABILITY:
General: AIRLINE NEGLIGENCE
Specific: Crash

SUMMARY
Outcome: Plaintiff Verdict
Non Verdict Award: $75,000
Total Verdict: $75,000

EXPERT-WITNESSES:

ATTORNEY:
Plaintiff: Harold D. Sullivan, II, by Ronald E. Hermanson, Inglewood, CA.
Defendant: Chase, Rotchford, Drukker and Bogust by Peter P. Brotzen, Los Angeles, CA.

RANGE AMOUNT: $50,000-99,999

STATE: California
COUNTY: Los Angeles

PRIMARY INJURY: Death

SUMMARY
PLAINTIFF:
Sex: Male
Age: 25
General Occupation: PARAPROFESSIONAL
Occupational Field: SERVICES-BUSINESS

DECEDENT:
Sex: Male

DEFENDANT:
Type: Single Organization
Sex: Organization
Organization Type: Transportation-Air, Passenger

DAMAGES:
Other: $75,000
Total: $75,000

DEFENDANT ADMITTED LIABILITY: Yes

FACTS:

A 25-year-old male computer technician was killed in an airplane crash in July of 1982. He was single and was survived by his parents, with whom he had lived prior to his death. Liability was admitted.

Jury Verdict Research

COURT:

JVR No. 15203 (Unknown State Ct. (Cal.)), 1987 WL 231591

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

21 Fla. J.V.R.A. 11:C2 (S.D.Fla.), 2011 WL 10549329

Copyright (c) 2013 Jury Verdict Review Publication, Inc.

United States District Court, S.D. Florida.

DAGGERT vs. THE UNITED STATES OF AMERICA.

08-CV-23108

DATE OF VERDICT/SETTLEMENT: September 30, 2011

TOPIC: NEGLIGENT AIR TRAFFIC CONTROL - FAILURE TO GUIDE SMALL PLANE - SPATIAL DIS-
ORIENTATION - PLANE CRASH - WRONGFUL DEATH OF THREE - 45% COMPARATIVE NEGLI-
GENCE ASSESSED TO PILOT.

SUMMARY:
Result: $4,346,000 NET COMBINED VERDICT

ATTORNEY:
Plaintiff's: Ricardo M. Martinez-Cid of Podhurst Orseck, P.A. in Miami, FL, and Marshall Dore Louis of Sin-
clair, Louis, Heath, Nussbaum & Zavertnik, P.A. in Miami, FL.

JUDGE: Adalberto Jordan

RANGE AMOUNT: $2,000,000-4,999,999

STATE: Florida
COUNTY: Not Applicable

INJURIES:
NEGLIGENT AIR TRAFFIC CONTROL - FAILURE TO GUIDE SMALL PLANE - SPATIAL DISORIENTA-
TION - PLANE CRASH - WRONGFUL DEATH OF THREE - 45% COMPARATIVE NEGLIGENCE AS-
SESSED TO PILOT.

FACTS:

This action was brought against the United States of America under the Federal Torts Claims Act. The case in-
volved the crash of a Piper aircraft in June of 2006, killing all three people aboard. The plaintiff alleged that a
Wilkes-Barre, Pennsylvania, air traffic controller employed by the Federal Aviation Administration negligently
failed to guide the aircraft thereby resulting in the crash. The defendant maintained that the crash was due to pi-
lot error and not the fault of the air traffic controller.

Testimony established that the small Piper Malibu aircraft left Greensboro, North Carolina on June 25, 2006, in
route to Sanford, Maine returning from a family wedding. On board was the pilot (a resident of Miami, Florida)
his father (a former commercial airline pilot) and his sister (a resident of Maine).

Evidence showed that the plane entered a storm and rapidly dropped 1,700 feet. The plaintiff contended that the controller assigned the pilot a routing directly into severe weather and did not warn him of the weather conditions. The plaintiff's expert testified that the air traffic controller caused the accident when he veered the aircraft into dangerous weather and failed to notify the aircraft of changes in its course and altitude. The plaintiff alleged that the defendant's air traffic controller breached his duty to advise the pilot to avoid the storm, direct him away from the dangerous weather and to advise that, once he entered the storm, his plane was descending. The plaintiff contended that the air traffic controller was paying attention to two other planes in the area and was not watching the decedent's plane.

The plaintiff claimed that, once the plane broke through the cloud cover, the pilot realized that the plane was going down. The pilot attempted to pull up on the yoke to stop descent, but this action only increased the downward graveyard spiral, according to the plaintiff's claims. The plane crashed in Tafton, Pennsylvania, with no survivors.

The decedent pilot, Walter Daggett, was 55 years old and owned and operated Walter Daggett Construction Company in Miami for 30 years. His father, Milton Daggert, was 76 years old and was a retired Delta Airlines pilot. The pilot's sister, Karla Daggett was 53 years old and was employed as an office manager in Maine.

The defendant argued that, while in the heavy cloud cover, the pilot failed to use his instruments to ascertain the direction of his flight. The rapid drop in altitude which occurred less than 20 seconds and the downward spiraling of the aircraft indicated that the pilot suffered from spatial disorientation, according to testimony offered. Spatial disorientation is a known condition suffered by airplane pilots when no horizon is in sight. When this condition occurs, the pilot becomes unable to correctly interpret aircraft attitude, altitude or airspeed, in relation to the earth or points of reference.

The defendant argued that the pilot had been trained in spatial disorientation, yet failed to rely on his instruments when the disorientation occurred. The defense maintained that there was insufficient time and nothing that the air traffic controller could have done to prevent the crash after the pilot became disoriented.

After a two week bench trial, the court found that the defendant's air traffic controller was 55% negligent and the decedent pilot was 45% comparatively negligent. The plaintiffs were awarded combined net damages of $4,346,000. The award included $2,550,000 to the pilot's surviving wife; $1,000,000 to the wife of the decedent father; and $796,000 to the two daughters of the decedent sister. Post-trial motions are currently pending.

Jury Verdicts Review Publications, Inc.

PUBLISHED IN: Florida Jury Verdict Review & Analysis, Vol. 21, Issue 11

21 Fla. J.V.R.A. 11:C2 (S.D.Fla.), 2011 WL 10549329

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. U.S. Gov. Works.