UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| William P. Burnette, a single man, and Tracie Garnett, individually and on behalf of the Estate of William Burnette III,<br><br>Plaintiffs,<br><br>vs.<br><br>Sierra Nevada Corporation; New Frontier Innovations, LLC; Airborne Services Global II, LLC; *et al.*,<br><br>Defendants. | 2:14-cv-2761 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at doc. 102] |

## I. MOTION PRESENTED

At docket 102, Defendant Sierra Nevada Corporation ("SNC") filed a motion for partial summary judgment as to the amount of damages intervening plaintiff Tracie Garnett ("Plaintiff") should receive in the event SNC is ultimately deemed liable for the wrongful death of her son, William Burnette III ("Burnette").[1]  SNC argues that the Death on the High Seas Act ("DOHSA")[2] applies here and limits Plaintiff's recovery to pecuniary losses.[3]  Plaintiff filed her response at docket 110, opposing the application of DOHSA.  SNC's reply is at docket 115.  Oral argument was requested but would not be of assistance to the court.

---

[1] Burnette's father, William P. Burnette, originally filed this lawsuit.  He and the defendants agreed to a settlement (Doc. 41), and his claims have been dismissed (Docs. 59, 64).

[2] 46 U.S.C. § 30301 *et seq.*

[3] 46 U.S.C. § 30303.

## II.  BACKGROUND

Burnette was hired by Defendant New Frontier Innovations, LLC ("NFI") to work as a sensor operator on aircrafts that would be conducting airborne counter-narcotics surveillance missions in Latin America. The surveillance missions were part of a service contract between SNC and a division of the United States Air Force. Pursuant to that contract, SNC agreed to provide, maintain, and operate aircraft that would conduct maritime detection and monitoring of suspected illicit trafficking targets/events for the Joint Interagency Task Force South (JIATF-S), a military entity responsible for the detection and monitoring of air and maritime drug activity in the Latin America region.[4] SNC was responsible for conducting the surveillance activities and transmitting the results over a secure data link to JIATF-S.[5] SNC, in turn, subcontracted with NFI to provide the personnel—such as pilots and sensor operators—for the missions.

On October 5, 2013, Brunette was part of a crew on board an aircraft that was conducting a counter-narcotics surveillance mission off the coast of Panama. It was a night mission and the aircraft's Enhanced Ground Proximity Warning System ("EGPWS"), which is designed to warn pilots of potentially dangerous proximity to terrain, was disabled by SNC maintenance personnel in Panama prior to the departure. Therefore, because of terrain elevation in the area, for operational and safety reasons the aircraft was to remain over water at all times during its surveillance flight.

At one point during the mission, the aircraft was flying over the Carribean Sea at about 1500 feet and tracking a suspected smuggling vessel off the coast of the border of Colombia and Panama. There were six crew members on board, including two pilots and two sensor operators, one of whom was Burnette. During the mission, the aircraft made an inadvertent incursion over the land. The pilot-in-command stated that "we

---

[4]Doc. 28-2 at p. 5. (United States Air Force Aircraft Accident Investigation Board Report, at p. 3).

[5]Doc. 29-3 at p. 46 (Prime Contract, Statement of Work, at p. 2, SNC0000045).

can't go over land." In response, Burnette proposed a plan to stay clear of the land while they tracked the suspected smuggling vessel: the plane would fly for three minutes on a course of 020° away from the shoreline and then turn around and fly the reciprocal course of 200° toward the coastline for three minutes. The crew generally followed this plan for about fourteen minutes until which time, after turning 200° toward the coast, the crew did not turn the aircraft away as planned, and the aircraft again flew past the coastline over the land. Burnette began telling the pilots to turn right. Less than half a minute later the plane still had not turned, and Burnette told the pilots to take a hard right. Less than a minute later, Burnette told the pilots to "elevate up." Approximately ten seconds later, the plane crashed into a ridge, killing Burnette and three other crew members.

About a year later, Burnette's father filed a wrongful death action against SNC in Superior Court of Arizona in Maricopa County. It was subsequently removed to federal court. Thereafter, Plaintiff intervened in the matter. The original plaintiff settled his claims and withdrew from the case. SNC now argues that Plaintiff's damages, in the event SNC is deemed liable for the death of Burnette, should be limited to her pecuniary losses under DOHSA. The parties do not dispute that Plaintiff's pecuniary losses total $16,504.41, but Plaintiff contends DOHSA does not apply and, therefore, her damages should not be limited to that amount.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7] Ultimately, "summary judgment will not lie if the . . . evidence is such that a

---

[6] Fed. R. Civ. P. 56(a).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

reasonable jury could return a verdict for the nonmoving party."[8]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[10]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[11]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[12]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[13]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[14]

## IV. DISCUSSION

SNC argues that DOHSA applies to the accident at issue here.  Section 1 of DOHSA provides in pertinent part: "Whenever the death of a person shall be caused by

---

[8]*Id.*

[9]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[10]*Id.* at 323.

[11]*Id.* at 323-25.

[12]*Anderson,* 477 U.S. at 248-49.

[13]*Id.* at 255.

[14]*Id.* at 248-49.

wrongful act, neglect, or default occurring on the high seas . . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States."[15] Recovery under DOHSA is limited to pecuniary damages[16] and preempts wrongful death claims brought under state law.[17] Therefore, in order for Plaintiff to recover non-pecuniary damages, as requested in her complaint, DOHSA must be inapplicable.

DOHSA applies to deaths from airplane crashes on the high seas,[18] and "high seas" includes territorial waters of foreign states.[19] SNC argues that while the accident itself did not occur on the high seas, but rather over the terrain of Columbia, the determinative act of negligence—Burnette's failure to instruct the pilots to turn the aircraft away from the coastline after three minutes as planned—did. While Plaintiff alleges that various negligent acts led to the crash, SNC argues that the court must pinpoint the location where the wrongful or negligent act "consummates" or "initially takes effect" and not the place where any "previous or subsequent negligence occurred."[20] It argues that Burnette's failure to instruct the pilots to turn the aircraft pursuant to his plan "was the first point during the flight in which any prior negligence, such as any alleged failure to properly train the Aircraft crew, manifested into an act or omission leading to the death" and that "[a]ny subsequent failure to detect and avoid the danger of flying over land only occurred because of the failure to maintain the

---

[15] 46 U.S.C. § 30302.

[16] 46 U.S.C. § 30303.

[17] *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 232-33 (1986).

[18] *See Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 119-20 (1998).

[19] *Howard v. Crystal Cruises*, 41 F.3d 527, 529-30 (9th Cir. 1994).

[20] Doc. 103 at p. 9.

1 Aircraft over the sea."[21] Thus, SNC argues that Burnette's mistake was the critical
2 moment where the negligence "took effect," and because that mistake was made over
3 foreign waters, it triggers the application of the DOHSA.

4     SNC's argument is unavailing and unsupported. SNC cites to a variety of cases
5 that support the proposition that the location of the death is not determinative to the
6 issue, but, while true, those cases apply to situations where the accident and death are
7 not simultaneous; that is, where an accident on the high seas causes an injury that
8 leads to death off the high seas. The cases do not support the application of DOHSA
9 to the situation here, where an aircraft crashed on land and caused immediate death.

10     SNC relies on *Motts v. M/V Green Wave*.[22] In *Motts*, an engineer on a ship was
11 severely injured when he was repairing the ship's engine while it was on the high seas.
12 There was a delay in getting the engineer to shore for treatment after the injury, and he
13 subsequently died from a heart attack after surgery. The lower court concluded that the
14 delays in getting the engineer treatment proximately caused the death, but that
15 because it was difficult to pinpoint when the injury turned from immobilizing to mortal
16 and because he died on land, DOHSA did not apply. The Fifth Circuit reversed that
17 decision, finding that DOHSA applied even though the engineer did not die at sea and
18 even though it could not determine exactly when the decedent's injuries turned mortal.
19 Contrary to SNC's assertion, the Fifth Circuit in *Motts* did not hold that DOHSA applies
20 when there are negligent actions taken on or over high seas that cause an accident
21 over land, as is the case here; it held that DOHSA confers jurisdiction where an injury
22 occurred while at sea that subsequently results in death ashore.[23] It stressed that even
23 though the negligent actions at issue were post-accident ones—related to a delay in

---

[21] Doc. 103 at p. 11.

[22] 210 F.3d 565 (5th Cir. 2000).

[23] 210 F.3d at 569-70 (noting that DOHSA confers jurisdiction if the decedent is on the high seas at the time he suffers his mortal injury).

getting the engineer off the ship for treatment after his injury—the injury occurred at sea, and the delay took place while the engineer was at sea.[24] The court clearly indicated that the place where the negligent decisions were made was not determinative.[25]

SNC acknowledges that decisions made on land related to training of the crew or maintenance of the aircraft that may have contributed to the accident are not determinative based on the case law, but it argues that when a decision is made on the high seas is the "but for" cause of the accident or the beginning of the accident, even if the accident eventually occurs on land, then DOHSA applies. SNC relies on the fact that the Fifth Circuit in *Motts* stated that DOHSA applies even if there was post-accident negligence as long as the decedent was still on the high seas at the time the negligence began and argues that, here, the determinative negligence began when Burnette did not instruct the pilots to change course. *Motts* in no way supports SNC's assertion. The Fifth Circuit was referring to situations where there is post-injury negligence that occurs while the injured person is still at sea, as opposed to some negligent action at the hospital or during surgery that ultimately causes death.[26] Post-injury negligence is not presented here. Moreover, the court continually stressed in its opinion that it is the *location of the accident* causing the death that is determinative[27] and specifically

---

[24]*Id.* at 570 (noting that the defendant's negligent delays in seeking treatment occurred while the engineer was at sea and because of an injury that happened at sea).

[25]*Id.* at 569-70 (citing numerous cases to supports its conclusion that even though the negligent decisions leading to the death and the death itself actually occurred onshore, the location of the accident is sufficient to implicate DOHSA).

[26]*Id.* at 571-72, 572 n.8.

[27]*Id.* at 571 ("This Circuit's precedents look to the location of the accident in determining whether DOHSA applies.").

expressed disagreement with any "moment of consummation" approach that SNC appears to champion here.[28]

SNC's reliance on *Bergen v. F/V St. Patrick*[29] is similarly mistaken. While the Ninth Circuit in *Bergen* stated that it is irrelevant if the death occurred off of the high seas for purposes of DOHSA, that is not the full extent of the court's decision. The court in *Bergen* acknowledged that the language in DOHSA says that it applies "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas," but explained that the courts have interpreted the provision "to refer to the site of an accident on the high seas, not to where death actually occurs *or where the wrongful act causing the accident may have originated*."[30] It therefore found it irrelevant that decisions contributing to the accident may have occurred onshore or within territorial waters, and held that DOHSA applied.[31] As was the case with *Motts*, there is nothing in *Bergen* to suggest that DOHSA should likewise apply here, where some negligent action taken over the high seas causes an accident on land. The opposite is true: *Bergen* clearly requires this court to look at the location of the accident itself, not the site of the negligent act that causes the accident, and the location of the accident here was on land.

SNC also relies on a couple of district court cases from other circuits in support of its argument, which upon review are also inapplicable. In *Moyer v. Rederi*,[32] the court held that DOHSA applied to a situation where the decedent began to suffer a heart attack while in the ocean on a snorkeling expedition but later died ashore. Again,

---

[28]*Id.* at 571 n.6.

[29]816 F.2d 1345, 1348 (9th Cir. 1987).

[30]*Id.* (emphasis added).

[31]*Id.* ("It is also irrelevant that decisions contributing to the [ship's] unseaworthiness may have occurred onshore or within territorial waters.").

[32]645 F.Supp. 620 (S.D. Fla. 1986).

like the circuit courts in the cases discussed above, the case does not support application of DOHSA to a situation where the crash and simultaneous death occur on land. SNC relies on language in *Moyer* to assert that the court must look at the place of the wrongful or negligent act that caused the death, but that is an inaccurate assessment of the court's opinion. The court did not find that when a negligent action occurs on the high seas, or in airspace over the high seas, that later results in an accident on or over land, DOHSA jurisdiction exists. The court was simply rejecting the argument that the location of the death is determinative. Indeed, later in the opinion when discussing whether land-based negligent acts—such as those related to inadequate screening and training procedures—made DOHSA inapplicable, the court stated as follows: "[A]uthority is clear that a cause of action under DOHSA accrues at the time and place where an allegedly wrongful act or omission 'was consummated' *in an actual injury*, not at the point [where] previous or subsequent negligence allegedly occurred."[33] It then found that, because the decedent's illness commenced while he was snorkeling on the high seas, DOHSA applies. SNC argues that, similar to the situation in *Moyer*, the accident really commenced the moment Burnette did not signal to the pilots to turn the aircraft away from the shore, and because that omission was while the aircraft was over the high seas, DOHSA applies. The court rejects this tortured analysis.

SNC also relies on *Chute v. United States*[34] to support its argument that the location of the aircraft when Burnette failed to signal for the aircraft to turn is determinative. In *Chute*, the decedents died on the high seas after hitting the wreck of a Navy ship. The court held that DOHSA applied because the site of the accident was on the high seas. It rejected the plaintiffs' argument that the Navy's failure to better mark or remove the wreck was made ashore and therefore made DOHSA

---

[33] *Id.* at 627 (emphasis added).

[34] 466 F.Supp. 61 (D. Mass. 1978).

inapplicable.[35]  In doing so it noted that "'the foundation of the right to recover (under DOHSA) is a wrongful act or omission [t]aking effect on the high seas'" and that the court must look to see where the wrongful act was consummated.[36]  *Chute* does not address the situation here and in no way suggests that Burnette's omission should be considered the consummation of the negligent acts leading up to the crash.  The consummation of the negligent acts is the crash itself based on the case law discussed herein.

In addition to SNC's misrepresentation or misinterpretation of the case law, a request to have DOHSA apply here is premised on the belief that the proximate cause of the accident is undisputedly Burnette's failure to tell the pilots to turn the aircraft away from shore.  Based on the record provided, the proximate cause of the crash is not an undisputed fact.  There are factual disputes as to who was ultimately responsible for making sure the aircraft stayed off the land and allegations of multiple negligent acts contributing to the accident.

## **V.  CONCLUSION**

Based on the preceding discussion, Defendant SNC's motion for partial summary judgment at docket 102 is DENIED.

Dated this 20th day of January 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[35]*Id.* at 64.

[36]*Id.* (quoting *Lacey v. L.W. Wiggins Airways, Inc.*, 95 F.Supp. 916, 918 (D. Mass. 1951)).

-10-